IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

FEB 1 9 2015

BY DAVID J. MALAND, CLERK
DEPUTY_____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | NO. 6:14CR63 |
| | § | |
| JEREMY CHAD TIDWELL (01) | § | |
| SHANNA PEEK TIDWELL (02) | § | |
| BRIAN TIDWELL (03) | § | |

SUPERSEDING INDICTMENT

THE UNITED STATES GRAND JURY CHARGES:

INTRODUCTION

1. At all times relevant to this Indictment, Defendants **Jeremy Chad Tidwell and**

   **Shanna Peek Tidwell** and/or their corporate entities were the owners and

   operators of retail stores as follows:

   **"Longview Candle Store," "Glass Dragon,"** and **"Glass Dragon
   Superstore,"** all contained in one building located at 4701 Estes Parkway in
   Gregg County, Texas;

   **"The Longview Vapor Store,"** also known as the **"Glass Dragon,"** located at
   807 N. Fredonia Street in Longview, Gregg County, Texas; and

   **"East Texas Vapor Lounge,"** also known as the **"Glass Dragon,"** located in
   the Pine Tree Shopping Center at 896-914 Pine Tree Road, in Longview,
   Gregg County, Texas.

   These stores are hereinafter sometimes individually and collectively referred to
   as the **"Glass Dragon."**

2. Defendants are related. **Jeremy Chad Tidwell and Shanna Peek Tidwell** are

   spouses. **Jeremy Chad Tidwell and Brian Tidwell** are brothers.

Indictment – Page 1

3. The Defendants ostensibly sold synthetic substances including synthetic cannabinoids and synthetic cathinones, also known as designer drugs, some of which are also known as "K2" or "Spice," to the public in packages labeled "incense," "potpourri," or a variety of other similarly named products. However, these products contained synthetic chemicals which mimic the effects of tetrahydrocannabinol (THC), the psychoactive ingredient in marijuana. The variety of products sold by the Defendants contained a variety of synthetic cannabinoid and synthetic cathinone compounds. Some of the compounds contained Schedule I controlled substances, while others contained controlled substance analogues. The synthetic substances were "misbranded drugs" due to their packaging.

4. The store located on Estes Parkway, now also known as the Longview Candle Store, sold candles and synthetic substances. The adjacent store, located in the same building, commonly known as the Glass Dragon, sold illegal drug paraphernalia. A sign identifies both of these stores as the "Glass Dragon Superstore."

5. In 2011, the Glass Dragon on Estes Parkway advertised itself as a "verified retailer" of K2 and a member of "K2verified.org." As of October, 2014, the Glass Dragon continued to be listed on this website as a verified K2 retailer.

6. The stores now known as The Longview Vapor Store and the East Texas Vapor Lounge sold synthetic substances, illegal drug paraphernalia, and e-cigarette products.

7. **Jeremy Chad Tidwell and Shanna Peek Tidwell** employed numerous individuals, including **Brian Tidwell**, to work in the Glass Dragon stores for the purpose of selling synthetic substances. The employees acted under the direction of **Jeremy Chad Tidwell, Shanna Peek Tidwell, and Brian Tidwell. Jeremy Chad Tidwell, Shanna Peek Tidwell, and Brian Tidwell** were aided and abetted by one another and by their employees in the illegal sale and distribution of synthetic substances and drug paraphernalia.

8. The Defendants and others sold Schedule I controlled substances and controlled substance analogues that were intended for human consumption through the Glass Dragon stores.

9. As of March 1, 2011, XLR11 is a controlled substance analogue. As of March 16, 2013, XLR11 is a Schedule I controlled substance.

10. As of March 1, 2011, JWH-018, and JWH-073, are Schedule I controlled substances.

11. As of July 9, 2012, JWH-019, JWH-081, JWH-250, AM2201, and RCS-4 are Schedule I controlled substances.

12. As of July 9, 2012, 5F-PB-22 is a controlled substance analogue. As of February 10, 2014, 5F-PB-22 is a Schedule I controlled substance.

13. As of May 16, 2013, AKB48 N is a controlled substance analogue.

14. As of February 10, 2014, AB-FUBINACA is a Schedule I controlled substance.

15. As of February 10, 2014, AB-CHMINACA, AB-PINACA, 5F AB-PINACA, and FUB-PB-22 are controlled substance analogues. As of January 30, 2015, AB-CHMINACA and AB-PINACA are Schedule I controlled substances.

16. As of March 7, 2014, 4-FMC is a Schedule I controlled substance.

17. At the store now known as the Longview Candle Store, upon entry, customers were asked for photo identification which was copied and/or scanned. Synthetic drugs were kept behind a counter and were provided to customers by employees. Customers were required to sign a waiver form before purchasing synthetic drugs. This form, in part, indicated that the products are "not for human consumption" and that wholesale customers "agree to store products in a controlled way." Employees prohibited customers from using cell phones. Sales tax was included in the price, but purchases were typically rounded up or down to amounts in $5.00 increments. Signage within this store stated that products would not be sold to those under 18 years of age, and "We have SCENTS not FLAVORS." The price of 1.5 gram - 10 gram sized packages varied between $10.00 and $40.00. Customers wanting to go from the Longview Candle Store to the adjacent Glass Dragon drug paraphernalia store were instructed to first take their merchandise to their cars.

18. Retail purchases of synthetic substances were primarily made with cash.

19. The Defendants intended the synthetic substances to be smokable products, and therefore intended them to be used to affect the structure or any function of the body (*i.e.,* to be used as a recreational drug to get the user "high"). Consequently, synthetic substances are a drug under the Food, Drug, and Cosmetic Act (FDCA).

20. The FDA considers "street drug alternatives" like synthetic substances to be misbranded drugs, in violation of the FDCA, and as such, has concluded that they pose a potential threat to the public health.

21. The Tidwell Corporation, incorporated May 26, 2011, was owned and controlled by **Jeremy Chad Tidwell and Shanna Peek Tidwell.**

22. **Shanna Peek Tidwell** wrote numerous checks from The Tidwell Corporation checking accounts for "Inventory."  On many occasions, immediately after the Glass Dragon on Estes Parkway received a shipment via Federal Express, **Shanna Peek Tidwell** wrote a series of three or more checks for the same monetary amount with each of the checks indicating it was for the same inventory number as the other checks in the series.

23. **Jeremy Chad Tidwell, Shanna Peek Tidwell, and Brian Tidwell** each made deposits of large amounts of United States currency into bank accounts for the Tidwell Corporation.  These cash deposits are the primary source of income for The Tidwell Corporation, and since in or about June, 2012, through on or about

October 8, 2014, in excess of $14,100,000 was deposited.  Deposits were

typically made once or twice a week.  One or more of the Defendants carried

the money into the bank in cardboard boxes.  Some of the money smelled of

marijuana.  On many occasions, the Defendant making the deposit did not wait

until the currency was counted or to receive a receipt.

24. On March 6, 2014, at the Glass Dragon stores on Pine Tree Road and Fredonia

Street, employees received citations for selling mislabeled products after they

sold products containing controlled substance analogues.

25. Between May 13 and May 19, 2014, Austin Bank closed all accounts owned

by **Jeremy Chad Tidwell and Shanna Peek Tidwell,** The Tidwell

Corporation, and their other corporate entities.  In the following days, **Jeremy

Chad Tidwell and Shanna Peek Tidwell** opened accounts at several other

banks.

26. Between April 4 and April 11, 2014, the Tidwell Corporation issued three

checks totaling $11,221 with a notation that they were for a "wall at Estes."

27. On or about April 28, 2014, and on or about May 23, 2014, a portion of the

Glass Dragon Superstore on Estes Parkway was identified as "Longview

Candle Store" by a handwritten sign on the door.  Since that time, this sign has

been removed, but "Longview Candle Store" has been painted on the side of

the building which sells synthetic substances, and "Glass Dragon" has been

painted on the side of the building which sells drug paraphernalia.

28. Between May 16, 2014 and September 22, 2014, The Tidwell Corporation issued checks for candle inventory.  These checks totaled $1,239.00.

29. On June 10, 2014, **Jeremy Chad Tidwell and Shanna Peek Tidwell** incorporated the Longview Candle Store, LLC.

30. On December 3, 2014, at the **Glass Dragon** stores, **Jeremy Chad Tidwell and Shanna Peek Tidwell** possessed in excess of 1,100 pounds of synthetic substances, which are also misbranded drugs, and numerous items of drug paraphernalia.

31. On December 3, 2014, at the **Glass Dragon** stores, **Jeremy Chad Tidwell and Shanna Peek Tidwell** possessed $49,455.80 in United States currency.

32. On December 3, 2014, at their Upshur County residence, **Jeremy Chad Tidwell and Shanna Peek Tidwell** possessed $425,795.00 in United States currency.

33. On December 3, 2014, in her vehicle, **Shanna Peek Tidwell** possessed $48,629.14 in United States currency.

<u>COUNT ONE</u>

Violation: 21 U.S.C. § 846 and 18 U.S.C. § 2
(Conspiracy to distribute and possess with
intent to distribute Schedule I Controlled
Substances and Aiding and Abetting)

The Grand Jury incorporates by reference Paragraphs 1-33 of the Introduction as

though fully reasserted and re-alleged herein.

Beginning in or about July, 2011, at a date unknown to the grand jury, and

continuing thereafter through on or about December 3, 2014, in Gregg County, Texas,

and in Upshur County, Texas, in the Eastern District of Texas; and elsewhere, **Jeremy**

**Chad Tidwell, Shanna Peek Tidwell, and Brian Tidwell,** Defendants herein, aided and

abetted by one another, did knowingly and intentionally combine, conspire, confederate

and agree together with each other and with others known and unknown to the Grand

Jury, to knowingly and intentionally distribute and possess with intent to distribute

Schedule I controlled substances, in violation of the laws of the United States, to wit, 21

U.S.C. § 841(a)(1) prohibiting the distribution of Schedule I controlled substances.

<u>COUNT ONE OVERT ACTS</u>

Unless otherwise noted, the following occurred at the Longview Candle Store/Glass

Dragon Superstore on Estes Parkway in Gregg County, Texas.  Each of the described

purchases of synthetic substances was made with a cash payment.

1. On July 24, 2013, in a vehicle in Gregg County, Texas, officers seized a

package of "No More Mr. Nice Guy," which was a mixture or substance containing a

detectable amount of XLR-11, a Schedule I controlled substance, and which bore a label from the Glass Dragon Superstore.

2. On May 23, 2014, an employee sold and distributed a product labeled "Galactic Head Trip," which was a mixture or substance containing a detectable amount of AB-FUBINACA, a Schedule I controlled substance, to a confidential source.

3. On June 6, 2014, in a vehicle in Van Zandt County, Texas, officers seized the following:

> 47 packages of a product labeled "Black Voodoo"
> 12 packages of a product labeled "Walking Dead"
> 40 packages of a product labeled "Gorilla Dro Classic"
> 21 packages of a product labeled "Black Voodoo"
> 20 packages of a product labeled "California Dreams"
> 5 packages of a product labeled "Black Voodoo Kush"
> 10 packages of a product labeled "Devil's Dank"
> 40 packages of a product labeled "Gorilla Dro Po-Po"

These packages bore labels from Longview Candle Store and/or Glass Dragon Superstore. Other packages of "California Dreams" sold at the Longview Candle Store on other occasions contained a Schedule I controlled substance.

4. On June 13, 2014, an employee sold and distributed a product labeled "California Dreams," which was a mixture or substance containing a detectable amount of AB-FUBINACA, a Schedule I controlled substance, to an undercover officer.

5. On August 28, 2014, an employee sold and distributed products labeled as follows: "California Dreams," "Devils' Dank," and "Fear & Loathing," all of which were mixtures or substances containing detectable amounts of AB-FUBINACA, a Schedule I controlled substance, to an undercover officer. The employee also sold and distributed

Indictment – Page 9

products labeled as follows: "Red Dragon" and "Big Bang," both of which were mixtures or substances containing detectable amounts of JWH-073, JWH-019, JWH-018, JWH-250, and JWH-081, Schedule I controlled substances.

6. On September 9, 2014, an employee sold and distributed products labeled as follows: "Judgement Day," which was a mixture or substance containing a detectable amount of AB-FUBINACA; "Reigning Dragon," which was a mixture or substance containing a detectable amount of 4-FMC, JWH-250, JWH-073, JWH-018, and JWH-019; "Magic Silver," which was a mixture or substance containing a detectable amount of JWH-018; and "Magic Gold," which was a mixture or substance containing a detectable amount of JWH-250, RCS-4, and AM2201; all of which were Schedule I controlled substances, to an undercover officer.

7. On December 3, 2014, **Jeremy Chad Tidwell and Shanna Peek Tidwell** possessed with intent to distribute approximately 3.25 pounds of a product labeled "Fear and Loathing," which was a mixture or substance containing detectable amounts of AB-FUBINACA and RCS-4, Schedule I controlled substances.

In violation of 21 U.S.C. § 846 and 18 U.S.C. § 2.

## COUNT TWO

Violation: 21 U.S.C. § 846 and 18 U.S.C. § 2
(Conspiracy to distribute and possess with
intent to distribute Controlled Substance
Analogues and Aiding and Abetting)

The Grand Jury incorporates by reference Paragraphs 1-27 of the Introduction as

though fully reasserted and re-alleged herein.

Beginning in or about July, 2011, at a date unknown to the grand jury, and

continuing thereafter through on or about December 3, 2014, in Gregg County, Texas,

and in Upshur County, Texas, in the Eastern District of Texas; and elsewhere, **Jeremy

Chad Tidwell, Shanna Peek Tidwell, and Brian Tidwell,** Defendants herein, aided and

abetted by one another, did knowingly and intentionally combine, conspire, confederate

and agree together with each other and with others known and unknown to the Grand

Jury, to knowingly and intentionally distribute and possess with intent to distribute

controlled substance analogues as defined in 21 U.S.C. § 802(32)(A), knowing that each

was intended for human consumption, as provided in 21 U.S.C. § 813, in violation of the

laws of the United States, to wit, 21 U.S.C. § 802(32)(A), 21 U.S.C. § 813, and  21

U.S.C. § 841(a)(1), prohibiting the distribution of controlled substance analogues.

## COUNT TWO OVERT ACTS

Unless otherwise noted, the following occurred at the Longview Candle Store/Glass

Dragon Superstore on Estes Parkway in Gregg County, Texas.  Each of the described

purchases of synthetic substances was made with a cash payment.

1. On March 3, 2012, at the scene of a traffic accident in Gregg County, Texas, a vehicle contained a package of a product labeled "Spike Max," which was a mixture or substance containing a detectable amount of XLR11, which was a controlled substance substance analogue at that time.

2. On July 24, 2013, in Kilgore, in Gregg County, Texas, officers seized a package of a product labeled "Alien Loose Leaf," which bore a label from the Glass Dragon Superstore and was a mixture or substance containing a detectable amount of 5F-PB-22, which was a controlled substance substance analogue at that time.

3. On July 24, 2013, in a vehicle in Gregg County, Texas, officers seized the following:

> 2 packages of a product labeled "Black Voodoo"
> 1 package of a product labeled "Twilite"
> 1 package of a product labeled "No More Mr. Nice Guy"
> 1 package of a product labeled "Ripped"

These packages bore labels from the Glass Dragon Superstore. Other packages of Black Voodoo sold at the Longview Candle Store on other occasions contained controlled substance analogues.

4. On March 6, 2014, in his vehicle in the parking lot of the **Glass Dragon Superstore**, a customer possessed a product labeled "Anonymous." This product was a mixture or substance containing a detectable amount of AB-CHMINACA, a controlled substance analogue. A store employee stated she sold two packages of "potpourri" to the customer ten minutes before she called for an ambulance for the customer.

5. On March 6, 2014, at the Glass Dragon store on Fredonia Street, an employee sold and distributed a product labeled "One Hit Wonder," which was a mixture or substance containing a detectable amount of AB-CHMINACA, a controlled substance analogue, to an undercover officer. The employee received a citation for selling an adulterated or mislabeled product. The employee wore a shirt labeled "Glass Dragon Security."

6. On March 6, 2014, at the Glass Dragon store in the Pine Tree Shopping Center, an employee sold and distributed a product labeled "One Hit Wonder," which was a mixture or substance containing a detectable amount of AB-CHMINACA, a controlled substance analogue, to an undercover officer. The employee received a citation for selling an adulterated or mislabeled product.

7. On May 23, 2014, an employee sold and distributed a product labeled "Black Voodoo," which was a mixture or substance containing a detectable amount of AB-CHMINACA, a controlled substance analogue, to a confidential source. The employee identified Black Voodoo as the best seller. The employee also sold a product labeled "Platinum XXX," which was a mixture or substance containing a detectable amount of FUB-PB-22, a controlled substance analogue, to a confidential source.

8. On May 30, 2014, an employee sold and distributed products labeled as follows: "Bizzaro" and "Lights Out," which were mixtures or substances containing detectable amounts of FUB-PB-22; and "Black Voodoo," which was a mixture or substance

containing a detectable amount of AB-CHMINACA; all of which were controlled

substance analogues, to an undercover officer.

9. On June 6, 2014, in a vehicle in Van Zandt County, Texas, officers seized the

following:

> 47 packages of a product labeled "Black Voodoo"
> 12 packages of a product labeled "Walking Dead"
> 40 packages of a product labeled "Gorilla Dro Classic"
> 21 packages of a product labeled "Black Voodoo"
> 20 packages of a product labeled "California Dreams"
> 5 packages of a product labeled "Black Voodoo Kush"
> 10 packages of a product labeled "Devil's Dank"
> 40 packages of a product labeled "Gorilla Dro Po-Po"

These packages bore labels from Longview Candle Store and/or Glass Dragon

Superstore. Other packages of Black Voodoo and Walking Dead sold at the Longview

Candle Store on other occasions contained controlled substance analogues.

10. On June 13, 2014, an employee sold and distributed products labeled

"Walking Dead," "Summer Rain," "Texas Fire," and "Night Train," which were mixtures

or substances containing detectable amounts of FUB-PB-22, a controlled substance

analogue, to an undercover officer. The employee also sold and distributed a product

labeled "Golden Leaf," which was a mixture or substance containing a detectable amount

of 5F-AB-PINACA, a controlled substance analogue.

11. On June 19, 2014, in a vehicle in Upshur County, Texas, officers seized a

package labeled "Black Voodoo." This package bore a label from Longview Candle

Store. Other packages of Black Voodoo sold at the Longview Candle Store on other

occasions contained controlled substance analogues.

12. On July 11, 2014, an employee sold and distributed products labeled "Blue Wave," "Black Arts," and "Summer Rain,"  which were mixtures or substances containing detectable amounts of FUB-PB-22, a controlled substance analogue, to an undercover officer.  An employee also sold and distributed a product labeled "Galactic Head Trip," a mixture or substance containing a detectable amount of AKB48 N, and a product labeled "Devil's Dank," a mixture or substance containing a detectable amount of 5F-AB-PINACA, both of which are controlled substance analogues, to an undercover officer.

13. On August 7, 2014, an employee sold and distributed products labeled "Blue Wave," "Black Arts," and "Black Voodoo."  Other packages of these products sold on other occasions contained controlled substance analogues.

14. On December 3, 2014, **Jeremy Chad Tidwell and Shanna Peek Tidwell** possessed with intent to distribute the following products which contained the specified controlled substance analogues:

a.     approximately 25.75 pounds of a product labeled "Twilight," which was a mixture or substance containing AB-PINACA;

b.     approximately 6.75 pounds of a product labeled "Summer Rain," which was a mixture or substance containing FUB-PB-22;

c.     approximately 160 pounds of a product labeled "Black Orchid," which was a mixture or substance containing AB-CHMINACA;

d.      approximately 3 pounds of a product labeled "Summer Rain," which was a mixture or substance containing FUB-PB-22;

e.      approximately 67.5 pounds of a product labeled "Black Orchid," which was a mixture or substance containing AB-CHMINACA; and

f.      approximately 22.5 pounds of a product labeled "Breeze," which was a mixture or substance containing AB-CHMINACA.

In violation of 21 U.S.C. § 846 and 18 U.S.C. § 2.

## COUNT THREE

Violation:  18 U.S.C. § 371 and 18 U.S.C. § 2
(conspiracy to commit offenses against the
United States and Aiding and Abetting)

The Grand Jury incorporates by reference Paragraphs 1-33 of the Introduction and

the Overt Acts of Counts One and Two as though fully reasserted and re-alleged herein.

Beginning in or about June, 2012, and continuing through on or about December

3, 2014, in the Eastern District of Texas, and elsewhere, **Jeremy Chad Tidwell, Shanna**

**Peek Tidwell,** and **Brian Tidwell,** defendants herein, aided and abetted by one another,

knowingly and willfully combined, conspired, confederated, and agreed with each other

and with other persons, both known and unknown to the Grand Jury, to commit offenses

against the United States, that is:  with the intent to defraud and mislead, to cause the

introduction of misbranded drugs into interstate commerce and to cause the receipt of

misbranded drugs in interstate commerce and to deliver and proffer delivery thereof for

pay or otherwise; in violation of 21 U.S.C. §§  331(a), 331(c), 333(a)(2), 352(a), 352(b),

and 352(f).

## MANNER AND MEANS

1. Between in or about June, 2012, and continuing through on or about December

3, 2014, defendants conspired to obtain and sell, through the Glass Dragon stores,

products that were subject to regulation by the Federal Food and Drug Administration as

"drugs," as that term is defined by 21 U.S.C. § 321(g)(1).

2. Defendants obtained and sold products that they and their suppliers falsely and misleadingly referred to as "incense," "potpourri," and other erroneous names, when in fact such products were drugs intended to affect the structure or function of the human body, or were intended for use as a component of such a drug.

3. Each of said drugs was misbranded in at least one of the following respects:

    (a)    the drugs' labeling did not bear adequate directions for use;

    (b)    the drugs' labeling was false and misleading in at least one particular, including but not limited to the following:

        i.    the drugs falsely were labeled in a manner indicating that they were not for human consumption, when in fact such drugs were intended for human consumption;

        ii.    the drugs were sold as incense, aromatherapy, potpourri, and under other false and misleading names when in fact the products were intended for use as drugs for human consumption and to affect the structure or any function of the body of people;

        iii.    the drugs were packaged with labeling which failed to identify accurately the package's contents and intended use;

    (c)    the drugs' packaging did not bear a label containing the name and place of the business of the manufacturer, packer, or distributor; and

    (d)    the drugs' labeling did not include adequate warnings against the drugs' use where such use might be dangerous to one's health, or warnings against unsafe dosages, methods, or durations of administration or application, in such manner and form as were necessary for the protection of users of the drugs.

4. Defendants intended to defraud and mislead government authorities regarding the products' status as drugs, with the purpose of avoiding regulation over the drugs and enabling themselves to continue selling the drugs in exchange for money.

Indictment – Page 18

5.  It was part of the conspiracy that the Defendants ordered and purchased misbranded drugs from suppliers and manufacturers located outside the State of Texas for resale through the Glass Dragon stores.  By purchasing misbranded drugs from suppliers outside the State of Texas, the Defendants and others caused the introduction of misbranded drugs into interstate commerce.  The suppliers and/or manufacturers shipped the misbranded drugs to the Glass Dragon using common carriers such as Fed Ex, and members of the conspiracy, including the Defendants, received those shipments at the Glass Dragon store on Estes Parkway.  Additionally, misbranded drugs were sold from the Glass Dragon stores and the Longview Candle Store to customers who presented drivers' licenses with Louisiana, Mississippi, Tennessee, and Mexico addresses.  Some of the customers transported the misbranded drugs out of Texas for resale.

6.  Members of the conspiracy ordered, obtained, and sold and distributed multiple different misbranded drugs including, but not limited to products described and/or marketed as the following, and variations of the same:  "One Hit Wonder," "Anonymous," "Black Voodoo," "Platinum XXX," "Lights Out," "Walking Dead," "Gorilla Dro Classic," "California Dreams," "Black Voodoo," "Devil's Dank," "Gorilla Dro Po-Po," "Summer Rain," "Texas Fire," "Night Train," "Blue Wave," "Black Arts," "Golden Leaf," "Red Dragon," "Big Bang," "Fear and Loathing," "Reigning Dragon," "Tribute," "Judgment Day," "Magic Silver," and "Magic Gold," and "Spike Max."

7.    As described in the Overt Acts for Counts One and Two, the synthetic substances sold at the Glass Dragon Stores and those seized in other locations bearing labels from the Glass Dragon stores were misbranded drugs.

## OVERT ACTS

1.    Between June 1, 2012 and August 25, 2014, the Tidwell Corporation, primarily through checks signed by **Shanna Peek Tidwell**, but also sometimes by wire transfers, and sometimes through checks from the **Jeremy Tidwell** dba Glass Dragon bank account, purchased over $6,200,000 in inventory from known or suspected suppliers of synthetic substances.  Many of the checks were notated for "inventory."  In comparison, checks from the Tidwell Corporation payable to known suppliers of other products or notated as being for specified inventory totaled as follows:

| | |
|---|---|
| Candle inventory | $1,239.00 |
| Vaping supplies/e-cigarette inventory | $16,652.55 |
| Drug paraphernalia inventory | $336,395.05 |

2.    On numerous occasions, from on or about August 17, 2012, through on or about December 3, 2014, the Defendants caused the introduction of numerous packages of misbranded drugs into interstate commerce by ordering the misbranded drugs from suppliers located in California, Florida, and elsewhere, for resale at the Glass Dragon stores in Gregg County, Texas.  Members of the conspiracy received packages of misbranded drugs shipped through Federal Express as follows:  LC Wholesale, also known as Forever Bags, a known supplier of synthetic substances in California sent 94

shipments weighing a total of 6,211 pounds, and a known supplier of synthetic

substances in Florida sent 20 packages weighing a total of 866 pounds.  Other suppliers

shipped misbranded drugs as well.

3.      On numerous occasions, from on or about March 23, 2013, through on or

about August 25, 2014, checks from accounts for the Tidwell Corporation or Jeremy

Tidwell DBA Glass Dragon, notated for "inventory," were made payable to L7

Enterprises a known California supplier and totaled $1,478,741.74.

4.      Pursuant to an invoice dated June 2, 2014, the Tidwell Corporation issued

check numbers 1087, 1088, and 1089, drawn on an account at BBVA and made payable

to L7 Enterprises, each in the amount of $9,500, for LC Wholesale Inventory number

1887.  Products for this invoice were identified as 6,000 units of "2G Black Voodoo" and

2,000 units of "5G Black Voodoo."  LC Wholesale and L7 Enterprises are related entities

which are known California synthetic drug distributors.

5.      Pursuant to an invoice dated June 4, 2014, the Tidwell Corporation issued

check numbers 1010, 1011, and 1012, drawn on an account at Citizens National Bank

and made payable to L7 Enterprises, each in the amount of $9,500, for LC Wholesale

Inventory number 1893.  Products for this invoice were identified as 6,000 units of "2G

Black Voodoo" and 2,000 units of "5G Black Voodoo."  LC Wholesale and L7

Enterprises are related entities which are known California synthetic drug distributors.

6.      Pursuant to an invoice dated June 9, 2014, the Tidwell Corporation issued

check numbers 1008, 1009, and 1016, drawn on an account at Citizens National Bank

and made payable to L7 Enterprises, each in the amount of $9,500, for LC Wholesale Inventory number 1900. Products for this invoice were identified as 6,000 units of "2G Black Voodoo" and 2,000 units of "5G Black Voodoo." LC Wholesale and L7 Enterprises are related entities which are known California synthetic drug distributors.

7.     On numerous occasions, from on or about August 17, 2012, through on or about April 15, 2013, checks from accounts for the Tidwell Corporation or Jeremy Tidwell DBA Glass Dragon, notated for "inventory," were made payable to a known Florida supplier and totaled $994,842.35.

8.     After misbranded drugs were received in interstate commerce, the defendants delivered and proffered them for delivery to customers for pay.

9.     On December 3, 2014, at the Longview Candle Store, three boxes, each of which weighed 55 pounds, were delivered by Federal Express. These boxes were shipped from Ace Sales in California and were addressed to the Glass Dragon Superstore and contained numerous packages of products labeled "Black Orchid," which were misbranded drugs. UPS delivered three additional boxes, which weighed a total of 33 pounds, and were shipped from Prime Distribution in California to "Brian" at the Glass Dragon. They contained numerous packages of products labeled "Twilite" and "No Mames," which were misbranded drugs.

In violation of 18 U.S.C. §§ 2 and 371, and 21 U.S.C. §§ 331(a), 331(c), 333(a)(2), 352(a), 352(b), and 352(f).

<u>COUNT FOUR</u>

Violation:  21 U.S.C. § 846 and 18 U.S.C. § 2
(Conspiracy to Sell and Offer for Sale Drug
Paraphernalia and Aiding and Abetting)

The Grand Jury incorporates by reference Paragraphs 1-27 of the Introduction as

though fully reasserted and re-alleged herein.

Beginning in or about July, 2011, at a date unknown to the grand jury, and

continuing thereafter through on or about December 3, 2014, in Gregg County, Texas, in

the Eastern District of Texas; **Jeremy Chad Tidwell and Shanna Peek Tidwell,**

Defendants herein, aided and abetted by one another, did knowingly and intentionally

combine, conspire, confederate and agree together with each other and with others known

and unknown to the Grand Jury, to commit the following offense against the United

States:  sell and offer for sale drug paraphernalia, as that term is defined in 21 U.S.C. §

863(d), contrary to the provisions of 21 U.S.C. § 863(a)(1) and 863(b) and 18 U.S.C. § 2.

In violation of 21 U.S.C. § 846 and 18 U.S.C. § 2.

## COUNT FIVE

> Violation: 18 U.S.C. § 1956(h) and 18
> U.S.C. § 2 (Conspiracy to Commit
> Money Laundering in violation of 18
> U.S.C. §§ 1956(a)(1)(A)(i) and
> 1956(a)(1)(B)(i) and Aiding and
> Abetting)

The Grand Jury incorporates by reference Paragraphs 1-33 of the Introduction as

though fully reasserted and re-alleged herein.

Beginning in or about June, 2012, through on or about December 3, 2014, in the

Eastern District of Texas and elsewhere, **Jeremy Chad Tidwell, and Shanna Peek**

**Tidwell** Defendants herein, aided and abetted by one another, did knowingly, willfully,

and unlawfully combine, conspire, confederate, and agree together with each other, and

with others known and unknown to the Grand Jury, to commit certain offenses against

the United States, to-wit:

1.  to knowingly conduct and attempt to conduct financial transactions affecting

interstate and foreign commerce, which involved the proceeds of a specified unlawful

activity, that is, conspiracy to distribute and possess with intent to distribute Schedule I

controlled substances, to wit: AB-FUBINACA, XLR-11, JWH-018, JWH-019, JWH-073,

JWH-250, JWH-081, 4-FMC, RCS-4, and AM2201 as described in Count One of this

Indictment; conspiracy to distribute and possess with intent to distribute controlled

substance analogues intended for human consumption, to wit: AB-CHMINACA, FUB-

PB-22, XLR11, 5F-PB-22, and AKB48 N as described in Count Two of this Indictment;

and conspiracy to sell and offer for sale drug paraphernalia as described in Count Four of

Indictment – Page 24

this Indictment, with the intent to promote the carrying on of the specified unlawful

activity, and that while conducting and attempting to conduct such financial transactions,

knew that the property involved represented the proceeds of some form of unlawful

activity, in violation of 18 U.S.C. § 1956(a)(1)(A)(i);

      2.  to knowingly conduct and attempt to conduct financial transactions affecting

interstate and foreign commerce, which involved the proceeds of a specified unlawful

activity, that is, conspiracy to distribute and possess with intent to distribute Schedule I

controlled substances and controlled substance analogues intended for human

consumption, to-wit: AB-FUBINACA, XLR-11, JWH-018, JWH-019, JWH-073, JWH-

250, JWH-081, 4-FMC, RCS-4, and AM2201 as described in Count One of this

Indictment; and conspiracy to distribute and possess with intent to distribute controlled

substance analogues intended for human consumption, to wit: AB-CHMINACA, FUB-

PB-22, XLR11, 5F-PB-22, and AKB48 N as described in Count Two of this Indictment;

and conspiracy to sell and offer for sale drug paraphernalia as described in Count Four of

this Indictment; knowing that the transactions were designed in whole or in part to

conceal and disguise the nature, location, source, ownership, and control of the proceeds

of the specified unlawful activity, and that while conducting and attempting to conduct

such financial transactions, knew that the property involved represented the proceeds of

some form of unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

## MANNER AND MEANS

1.  As representative of the manner and means of the conspiracy and to accomplish

its objects, one or more of the defendants and other persons known and unknown to the

Grand Jury, performed or caused the performance of the certain actions at the **Glass**

**Dragon** stores, in the Eastern District of Texas, including but not limited to the

following.  From in or about June, 2012, to on or about December 3, 2014, the defendants

listed above and other persons known and unknown to the Grand Jury were employees

and distributors for this organization.  These co-conspirators were responsible for

working in the retail stores, selling products to customers, enforcing the rules of the

**Longview Candle Store** as described in Paragraph 17 of the Introduction, and making

hourly drops of currency into the store safe.

2.  It was a part of the conspiracy for members to commingle and deposit United

States currency that was derived from the sale, by the Glass Dragon stores, of Schedule I

controlled substances, controlled substance analogues, other synthetic substances, drug

paraphernalia, candles, and vaping products into bank accounts belonging to the **Tidwells**

and the Tidwell Corporation in order to promote the carrying on of the specified unlawful

activity and to conceal or disguise the nature, location, source, ownership, and control of

the proceeds derived from the specified unlawful activity.  Since June, 2012, cash

deposits into the **Tidwells'** and the Tidwell Corporation bank accounts totaled a

minimum of $14,100,000.  Credit card income received by the Glass Dragon stores was

deposited into separate bank accounts for **Jeremy Tidwell** dba Glass Dragon, Longview

Candle Store, and East Texas Vapor dba Longview Vapor Store.  The East Texas Vapor

Lounge bank account received $3,511.24 since February, 2014.  Credit card income

received into the other bank accounts totaled a minimum of $3,900,000.  As set out in

Count 3 - Overt Act 1, based on expenses for inventory purchasing, significantly less

money was spent for the candle and vaping products inventory.  There is no other known

source of income for The Tidwell Corporation.

      3. It was further a part of the conspiracy for **Jeremy Chad Tidwell and Shanna**

**Peek Tidwell** to incorporate Longview Candle Store, LLC and purchase a minimal

amount of candle inventory, and to incorporate East Texas Vapor, LLC with the assumed

name of The Longview Vapor Store, in order to conceal or disguise the nature, location,

source, ownership, and control of the proceeds derived from the specified unlawful

activity.  These actions were taken by the **Tidwells** after their employees received

citations for selling mislabeled products and after Austin Bank closed the **Tidwells'** bank

accounts.  While a small amount of vaping supplies may have been previously sold, no

checks were issued to identifiable vaping suppliers until after employees were cited for

selling mislabeled products.  While candles had been previously sold, they were

purchased from a store employee for small cash payments.  No checks were written for

candle inventory until after Austin Bank began closing bank accounts.

      4. Wheels Up Aviation, LLC was formed by a Certificate of Amendment on

February 18, 2014.  **Jeremy Chad Tidwell and Shanna Peek Tidwell** are the governing

persons.  Cash deposits of $315,000 were made into bank accounts for this entity.  There

is no known legitimate source of income for Wheels Up Aviation, LLC.  It was part of the conspiracy for members to purchase two airplanes with the proceeds derived from the distribution and sale of Schedule I controlled substances, controlled substance analogues, and drug paraphernalia using money contained in the Wheels Up Aviation, LLC bank accounts to conceal or disguise the nature, location, source, ownership, and control of the proceeds derived from the specified unlawful activity.

    a.    On or about April 4, 2014, Wheels Up Aviation issued a wire transfer from an Austin Bank account in the amount of $68,500 for the purchase of a Cessna airplane.

    b.    On or about June 30, 2014, **Shanna Peek Tidwell** signed a check from the Wheels Up Aviation account at Texas Bank and Trust in the amount of $39,900 for the purchase of a Cirrus airplane.

5.  It was part of the conspiracy for **Shanna Peek Tidwell** to frequently sign checks to known and suspected suppliers of synthetic substances for "inventory."  In numerous instances series of three, or more, checks were written, each check in the same monetary amount, for the same inventory number, in order to promote the carrying on of the specified unlawful activity and to conceal or disguise the nature, location, source, ownership, and control of the proceeds derived from the specified unlawful activity. Most of the checks were issued from The Tidwell Corporation account.

6. Between in or about March, 2013 and in or about October, 2014, checks totaling a minimum of $1,000,000 were written to L7 Enterprises or related entities for the

purchase of products such as "Black Voodoo," "Anonymous," and "One Hit Wonder,"

based on approximately 65 invoices from LC Wholesale to the **Glass Dragon**. Forever

Bags, L7 Enterprises, and LC Wholesale are suspected related entities and known

suppliers of synthetic substances.


## OVERT ACTS

1. On June 5, 2014, **Shanna Peek Tidwell** signed check numbers 1087, 1088, and

1089 from The Tidwell Corporation account # XXXXXX1228 at BBVA, each in the

amount of $9,500, and made payable to L7 Enterprises, and each with a notation of

"inventory inv-1887," which was dated June 2, 2014 and was for the purchase of 8,000

units of "Black Voodoo." On 4, 2014, Forever Bags in California shipped 138 pounds of

packages to The Glass Dragon Super Store which were delivered on June 5, 2014. On

June 5, 2014, the Glass Dragon Superstore shipped a package weighing 0 pounds to LC

Wholesale in California. This package was delivered on June 6, 2014. Check numbers

1087, 1088, and 1089 were deposited on June 10, 2014.

2. On June 10, 2014, **Shanna Peek Tidwell** signed check numbers 1010, 1011,

and 1012 from The Tidwell Corporation account # XXXXXX5316 at Citizens National

Bank, each in the amount of $9,500, and made payable to L7 Enterprises, and each with a

notation of "inventory inv-1893," which was dated June 4, 2014 and was for the purchase

of 8,000 units of "Black Voodoo." On June 9, 2014, Forever Bags in California shipped

138 pounds of packages to The Glass Dragon Superstore which were delivered on June

10, 2014.  On June 10, 2014, the Glass Dragon Superstore shipped a package weighing 0 pounds to LC Wholesale in California.  This package was delivered on June 11, 2014. Check numbers 1010, 1011, and 1012 were deposited on June 16, 2014.

3. On June 16, 2014, **Shanna Peek Tidwell** signed check numbers 1008, 1009, and 1016 from The Tidwell Corporation account # XXXXXX5316 at Citizens National Bank, each in the amount of $9,500.00, and made payable to L7 Enterprises, and each with a notation of "inventory inv-1900."  On June 14, 2014, Forever Bags in California shipped 158 pounds of packages to The Glass Dragon Superstore which were delivered on June 16, 2014.  On June 16, 2014, the Glass Dragon Super Store shipped a package weighing 0 pounds to LC Wholesale in California.  This package was delivered on June 17, 2014.  Check numbers 1009, 1016, and 1008 were respectively deposited on June 17, June 18, and June 19, 2014.

In violation of 18 U.S.C. § 1956(h) and 18 U.S.C. § 2.

COUNTS 6-33

>Violation: 18 U.S.C. § 1957 and 18
>U.S.C. § 2 (Engaging in monetary
>transactions in property derived from
>specified unlawful activity and Aiding
>and Abetting)

The Grand Jury incorporates by reference Paragraphs 1-27 of the Introduction and

the Manner and Means paragraphs of Count 5 of this Indictment as though fully

reasserted and re-alleged herein.

On or about the dates set forth below, in the Eastern District of Texas, the

defendants, **Jeremy Chad Tidwell, Shanna Peek Tidwell,** and, where indicated, **Brian**

**Tidwell,** aided and abetted by one another, knowingly engaged and attempted to engage

in monetary transactions by, through, and to a financial institution, affecting interstate or

foreign  commerce, in criminally derived property of a value greater than $10,000, that is

the transfer of U.S. currency, funds, or monetary instruments, such property having been

derived from a specified unlawful activity, namely the conspiracies for the sale and

distribution of Schedule I controlled substances, controlled substance analogues, and drug

paraphernalia, violations of 21 U.S.C. § 846, 841, 813, and 863.

With respect to Counts 6-33 set forth below, defendants **Jeremy Chad Tidwell**

**and Shanna Peek Tidwell** issued checks, wire transfers, or on-line transfers drawn on

the bank accounts identified to purchase the assets or make payments as identified below.

With respect to Counts 20 and 31 set forth below, defendant **Brian Tidwell** was the

recipient of checks written by **Jeremy Chad Tidwell** and **Shanna Peek Tidwell.**

## Count 6
On March 14, 2013, a check in the amount of $92,875.04 was written from Austin Bank
Acct. # XXXXX3982 in the name of "Jeremy and Shanna Tidwell" to Hayes RV for the
purchase of a 2013 Jayco motor home.

## Count 7
On March 14, 2013, a check in the amount of $20,000.00 was written from Austin Bank
Acct. # XXXXX3982 in the name of "Jeremy and Shanna Tidwell" to Guaranty Bond
Bank for the mortgage on the residence located at 130 Coyle Road.

## Count 8
On March 27, 2013, a check in the amount of $46,899.59 was written from Austin Bank
Acct. # XXXXX3982 in the name of "Jeremy and Shanna Tidwell" to The Harley Shop
for the purchase of a 2013 Harley motorcycle.

## Count 9
On April 17, 2013, an online transfer in the amount of $25,000.00 was issued from
Austin Bank Acct. # XXXXX6989 in the name of "The Tidwell Corporation" to Jeremy
and Shanna Tidwell.

## Count 10
On April 17, 2013, a check in the amount of $20,000.00 was written from Austin Bank
Acct. # XXXXX3982 in the name of "Jeremy and Shanna Tidwell" to Guaranty Bond
Bank for the mortgage on the residence located at 130 Coyle Road.

## Count 11
On May 14, 2013, a check in the amount of $20,938.00 was written from Austin Bank
Acct. # XXXXX3982 in the name of "Jeremy and Shanna Tidwell" to Longview Cycle
and Ski for the purchase of a 2013 Can Am Maverick.

## Count 12
On July 5, 2013, a check in the amount of $19,180.00 was written from Austin Bank
Acct. # XXXXX3982 in the name of "Jeremy and Shanna Tidwell" to Trinity School of
Texas for tuition for the Tidwell children.

**Count 13**

On August 2, 2013, an online transfer in the amount of $50,000.00 was issued from Austin Bank Acct. # XXXXX6989 in the name of "The Tidwell Corporation" to Jeremy and Shanna Tidwell.

**Count 14**

On August 6, 2013, an online transfer in the amount of $20,000.00 was issued from Austin Bank Acct. # XXXXX6989 in the name of "The Tidwell Corporation" to Jeremy and Shanna Tidwell.

**Count 15**

On September 30, 2013, a check in the amount of $110,000.00 was issued from Southside Bank Acct. # XXX5320 in the name of "Jeremey Tidwell DBA Glass Dragon" to Shanna Tidwell.

**Count 16**

On October 4, 2013, a check in the amount of $10,782.47 was issued from Austin Bank Acct. # XXXXX3982 in the name of "Jeremey and Shanna Tidwell" to Peters Chevrolet for the purchase of a 2014 Corvette.

**Count 17**

On October 6, 2013, a check in the amount of $30,500.00 was issued from Austin Bank Acct. # XXXXX3982 in the name of "Jeremey and Shanna Tidwell" to Peters Chevrolet for the purchase of a 2014 Corvette.

**Count 18**

On November 12, 2013, a check in the amount of $69,379.69 was written from Austin Bank Acct. # XXXXX6989 in the name of "the Tidwell Corporation" to Tyler Ford for the purchase of a 2014 Ford F-350 truck.

**Count 19**

On November 12, 2013, an online transfer in the amount of $40,000.00 was issued from Austin Bank Acct. # XXXXX6989 in the name of "the Tidwell Corporation" to Jeremy and Shanna Tidwell.

**Count 20**

On December 20, 2013, a check in the amount of $15,151.37 was written from Austin Bank Acct. # XXXXX6989 in the name of "the Tidwell Corporation" to Brian Tidwell.

**Count 21**
On January 3, 2014, a check in the amount of $13,058.00 was written from Austin Bank Acct. # XXXXX5832 in the name of "Oliver & Addison, LLC" to Ryan Martz for remodeling work at the Pine Tree Shopping Center.

**Count 22**
On February 14, 2014, a check card in the amount of $10,022.36 was written from Austin Bank Acct. # XXXXX6989 in the name of "the Tidwell Corporation" to Stebbins Aviation for a charter flight.

**Count 23**
On March 14, 2014, a check in the amount of $12,262.00 was written from Austin Bank Acct. # XXXXX5832 in the name of "Oliver & Addison, LLC" to Ryan Martz for remodeling work at the Pine Tree Shopping Center.

**Count 24**
Between April 4 and April 11, 2014, three checks totaling $11,221.00 were issued from Austin Bank Acct. # XXXXX6989 in the name of "The Tidwell Corporation" to Ryan Martz for the construction of a wall at the Glass Dragon Superstore.

**Count 25**
On April 4, 2014, a wire transfer in the amount of $68,500.00 was issued from Austin Bank Acct. # XXXXX6582 in the name of "Wheels Up Aviation, LLC" to an individual identified as "RJS" for the purchase of a 1976 Cessna aircraft.

**Count 26**
On April 11, 2014, a check in the amount of $140,000.00 was issued from Southside Bank Acct. # XXX5320 in the name of "Jeremy Tidwell DBA Glass Dragon" to the Tidwell Corporation.

**Count 27**
On May 1, 2014, an online transfer in the amount of $20,000.00 was issued from Austin Bank Acct. # XXXXX3982 in the name of "Jeremy and Shanna Tidwell" to Shanna Tidwell.

**Count 28**
On May 8, 2014, an online transfer in the amount of $20,000.00 was issued from Austin Bank Acct. # XXXXX6989 in the name of "the Tidwell Corporation" to Jeremy and Shanna Tidwell.

**Count 29**

On May 23, 2014, a wire transfer in the amount of $71,004.70 was issued from Southside Bank Acct. # XXX5320 in the name of "Jeremy Tidwell DBA Glass Dragon" to Marine Holding Corporation for the purchase of a 2014 Pontoon boat.

**Count 30**

On June 30, 2014, a check in the amount of $39,000 was written from Texas Bank & Trust Acct. # XX6852 in the name of "Wheels Up Aviation, LLC" to an individual identified as "DH" for the purchase of a 2001 Cirrus aircraft.

**Count 31**

On July 11, 2014, a check in the amount of $10,603.15 was written from Southside Bank Acct. # XXX5320 in the name of "Jeremy Tidwell DBA Glass Dragon" to Brian Tidwell.

**Count 32**

On September 4, 2014, a check in the amount of $42,000 was written from Texas Bank & Trust Acct. # XX6852 in the name of "Wheels Up Aviation, LLC" to an individual identified as "MM" for the purchase of Hangar #103 at the Pueblo Memorial Airport.

**Count 33**

On October 28, 2014, a check in the amount of $29,017 was written from Citizens National Bank Acct. # XXXXXX5316 in the name of "the Tidwell Corporation" to Lively Olds Cadillac for the purchase of a 2015 Cadillac SUV.

All in violation of 18 U.S.C. § 1957 and 18 U.S.C. § 2.

COUNT 34

Violation: 21 U.S.C. § 844(a) (Possession of marijuana)

On or about December 3, 2014, in Upshur County, Texas in the Eastern District of Texas, **Jeremy Chad Tidwell and Shanna Peek Tidwell**, Defendants herein, did knowingly, intentionally, and unlawfully possess marijuana, a Schedule I controlled substance.

In violation of 21 U.S.C. § 844(a).

COUNT 35

Violation: 18 U.S.C. § 924(c) and 18 U.S.C. § 2 (Possession of Firearms During and in Furtherance of a Drug Trafficking Crime and Aiding and Abetting)

On or about December 3, 2014, in Upshur County, Texas, in the Eastern District of Texas, **Jeremy Chad Tidwell and Shanna Peek Tidwell**, Defendants herein, aided and abetted by one another, did knowingly and intentionally possess firearms, to wit:

1. Smith and Wesson, M&P 15, .223 caliber rifle, serial number SU10708
2. Stoeger, M3500, 12 caliber shotgun, serial number 1346926
3. Ruger, LCR 22LR, .22 caliber pistol, serial number 548-34624
4. Beretta, PX4 Storm, semi-automatic 9mm pistol, serial number PZ77540

during and in furtherance of a felony drug trafficking crime for which they may be prosecuted in a court of the United States, that is conspiracy to distribute and possess with intent to distribute Schedule I controlled substances, a violation of 21 U.S.C. § 846, as alleged in Count One.

In violation of 18 U.S.C. § 924(c) and 18 U.S.C. § 2.

<u>COUNT 36-38</u>

Violation:  18 U.S.C. §§ 1341 and 2 (Mail fraud
and Aiding and Abetting)

The Grand Jury incorporates by reference the Introduction and Count 3, as though

fully reasserted and re-alleged herein.

Beginning in or about August 17, 2012, and continuing thereafter through on or

about December 3, 2014, the exact dates being unknown to the Grand Jury, in the Eastern

District of Texas and elsewhere, the defendants knowingly and intentionally devised and

executed a scheme to defraud the Food and Drug Administration and the public by

marketing and distributing misbranded drugs, and drugs they represented to be

"potpourri", when, in truth and in fact, the misbranded drugs they marketed and

distributed contained synthetic cannabinoids and synthetic cathinones, some of which

were Schedule I controlled substances and others of which were controlled substance

analogues.

On or about December 3, 2014, in the Eastern District of Texas and elsewhere, for

the purpose of executing the scheme to defraud the FDA and the public and attempting to

do so, **Jeremy Chad Tidwell and Shanna Peek Tidwell,** defendants herein, knowingly

caused shipments of misbranded drugs, to be delivered by private and commercial

interstate carriers, such as United Parcel Service ("UPS"), and Federal Express

("FedEx"), according to the directions thereon, including at least the following

shipments:

| Count | On or About Date | Items Shipped/Delivered | Carrier |
|---|---|---|---|
| 36 | December 3, 2014 | Ace Sales shipped approximately 165 pounds of "Black Orchid," a misbranded drug, from California, to the Glass Dragon Superstore in Gregg County, Texas | Fed Ex |
| 37 | December 3, 2014 | Prime Distribution shipped numerous packages of "Twilite," a misbranded drug,  from California to "Brian" at the Glass Dragon Superstore in Gregg County, Texas | UPS |
| 38 | December 3, 2014 | Prime Distribution shipped numerous packages of "No Mames," a misbranded drug, from California to "Brian" at the Glass Dragon Superstore in Gregg County, Texas. | UPS |

In violation of 18 U.S.C. § 2 and 1341.

<u>COUNTS 39-41</u>

Violation:  21 U.S.C. § 856 and 18 U.S.C. §  2
(Maintaining a Place for the Distribution of a
Controlled Substance or Controlled Substance
Analogue and Aiding and Abetting)

Beginning in or about July, 2011, at a date unknown to the grand jury, and

continuing thereafter through on or about December 3, 2014, in Gregg County, Texas, in

the Eastern District of Texas; **Jeremy Chad Tidwell and Shanna Peek Tidwell,**

Defendants herein, aided and abetted by one another, did manage and control, the

following buildings and locations as owners, for the purpose of unlawfully storing and

distributing Schedule I controlled substances and controlled substance analogues for

human consumption, to wit:

Count 39: 4701 Estes Parkway, Gregg County, Texas;

Count 40: 807 N. Fredonia Street in Longview, Gregg County, Texas; and

Count 41: Pine Tree Shopping Center at 896-914 Pine Tree Road, in Longview,
Gregg County, Texas.


In violation of 21 U.S.C. § 856 and 18 U.S.C. § 2.

<u>COUNT 42</u>

Violation:  21 U.S.C. § 841(a)(1) and 18 U.S.C.
§ 2 (Possession with Intent to Distribute a
Schedule I Controlled Substance and Aiding
and Abetting)

On or about December 3, 2014, in Gregg County, Texas, in the Eastern District of

Texas, **Jeremy Chad Tidwell and Shanna Peek Tidwell**, Defendants herein, aided and

abetted by one another, did knowingly, intentionally, and unlawfully possess with intent

to distribute approximately 3.25 pounds of a mixture or substance containing detectable

amounts of AB-FUBINACA and RCS-4, Schedule I controlled substances.

In violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

COUNTS 43-48

> Violation:  21 U.S.C. §§ 802(32)(A), 813,
> 841(a)(1) and 18 U.S.C. § 2 (Possession with
> Intent to Distribute a Controlled Substance
> Analogue and Aiding and Abetting)

On or about December 3, 2014, in Gregg County, Texas, in the Eastern District of

Texas, **Jeremy Chad Tidwell and Shanna Peek Tidwell,** Defendants herein, aided and

abetted by one another, did knowingly, intentionally, and unlawfully possess with intent

to distribute mixtures or substances containing a detectable amount of each compound set

forth below, each being a controlled substance analogue as defined in 21 U.S.C. §

802(32)(A), knowing that each was intended for human consumption, as provided in  21

U.S.C. § 813.

Count 43:  approximately 25.75 pounds of a product labeled "Twilight," which

contained AB-PINACA.

Count 44:  approximately 6.75 pounds of a product labeled "Summer Rain," which

contained FUB-PB-22.

Count 45:  approximately 160 pounds of a product labeled "Black Orchid," which

contained AB-CHMINACA.

Count 46:  approximately 3 pounds of a product labeled "Summer Rain," which

contained FUB-PB-22.

Count 47:  approximately 67.5 pounds of a product labeled "Black Orchid," which

contained AB-CHMINACA.

Count 48:  approximately 22.5 pounds of a product labeled "Breeze," which contaied AB-CHMINACA.

In violation of 21 U.S.C. §§ 802(32)(A), 813, 841(a)(1) and 18 U.S.C. § 2.

## NOTICE OF INTENT TO SEEK CRIMINAL FORFEITURE

### Pursuant to 18 U.S.C. § 982, 21 U.S.C. § 853, and 28 U.S.C. § 2461

As the result of committing one or more of the foregoing offenses alleged in this Indictment, Defendants herein, shall forfeit to the United States pursuant to 18 U.S.C. § 982, 21 U.S.C. § 853, and 28 U.S.C. § 2461:

1.      any property constituting, or derived from, and proceeds the Defendants obtained, directly or indirectly, as the result of such violation; and

2.      any of the Defendants' property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation, including, but not limited to the following:

**Cash Proceeds:**

Approximately $18,000,000 in United States currency and all interest and proceeds traceable thereto, in that such sum in aggregate is property constituting, or derived from, proceeds obtained directly or indirectly, as the result of the foregoing offenses alleged in this Indictment.

**Real Property:**

1. A residence located at 130 Coyle Road and the attached 1.12 acres on Blackhaw Road, Gilmer, Upshur County, Texas

2. A building located at 4701 Estes Parkway, in Gregg County, Texas known as the Glass Dragon Super Store, the Glass Dragon, and the Longview Candle Store

3.  A shopping center, together with the parking lot, located at 896-914 Pine Tree Road, in Longview, Gregg County, Texas known as the Pine Tree Shopping Center, and which contains a store known as the East Texas Vapor Lounge and the Glass Dragon

4.  A building located at 807 N. Fredonia Street, in Longview, Texas known as the Longview Vapor Store and the Glass Dragon

5.  A residence located at 3766 State Highway 155, in Gilmer, Upshur County, Texas

6.  Those certain tracts or parcels of land located on CR 371, Smith County, Texas, described as:

    (a)    Tract 3, Abstract 747, Isaac Norris Survey
            APN/Parcel #100000074700003000
            Map #19670/Map Grid N-11.2D

    (b)    Tract 3A, Abstract 747, Isaac Norris Survey
            APN/Parcel #100000074700003010
            Map #19670/Map Grid N-11.2D

    (c)    Tract 4, Abstract 588, Samuel S. Lovett Survey
            APN/Parcel #100000058800004000
            Map #19650/Map Grid N-11.2D

    (d)    Tract 4A, Abstract 588, Samuel S. Lovett Survey
            APN/Parcel #100000058800004010
            Map #19650/Map Grid N-11.2D

## Bank Accounts/IRA:

1.  $20,011.47 seized from BBVA checking account #xxxxxx1228, in the name of Tidwell Corporation
2.  $10,006.04 seized from BBVA checking account #xxxxx1961, in the name of Tidwell Corporation
3.  $5,383.00 seized from BBVA checking account #xxxxxx4073, in the name of Oliver & Addison, LLC, d/b/a Pine Tree
4.  $10,829.82 seized from Capital One checking account #xxxxxx9541, in the name of Jeremy and Shanna Tidwell

5.      $325,834.44 seized from Citizens National Bank checking account #xxxxxx5316, in the name of Tidwell Corporation

6.      $39,627.72 seized from FNB Tom Bean checking account #xxx4129, in the name of Jeremy and Shanna Tidwell

7.      $1,919.00 seized from JPMorgan Chase Bank account #xxxxxx0772 and #xxxxx5728, in the name of Brian Tidwell

8.      $6,800.37 seized from Southside Bank checking account #xxx5320, in the name of Jeremy Tidwell, d/b/a Glass Dragon

9.      $151,889.70 seized from Southside Bank checking account #xxx3376, in the name of Longview Candle Store

10.     $7,480.86 seized from Southside Bank checking account #xxx3406, in the name of East Texas Vapor, d/b/a Longview Vapor

11.     $150,578.44 seized from Texas Bank & Trust checking account #xx6852, in the name of Wheels Up Aviation, LLC

12.     $4,555.39 seized from Texas Bank & Trust health savings account #xxx7581, in the name of Shanna Tidwell

13.     Undetermined amount of funds seized from HD Vest IRA accounts

**U.S. Currency:**

1.      $425,795.00 seized from Jeremy and Shanna Tidwell's residence located at 130 Coyle Road, Gilmer, TX

2.      $48,629.14 seized from Shanna Tidwell

3.      $2,702.00 seized from Jeremy  Tidwell

4.      $1,098.00 seized from the East Texas Vapor Store, located at 896-914 Pine Tree Road, Longview, TX

5.      $2,213.00 seized from the Glass Dragon Super Store, located at 4701 Estes Parkway, Longview, TX

6.      $5,430.00 seized from the Glass Dragon Super Store, located at 4701 Estes Parkway, Longview, TX

7.      $40,714.80 seized from the Longview Candle Store, located at 4701 Estes Parkway, Longview, TX

**Precious Metals:**

Assorted silver bars and coins having an approximate value of $45,339.00

**Conveyances:**

1.      1976 Cessna, model 172N, fixed wing, single engine aircraft, serial # 17268047; tail #N75925

2.      2001 Cirrus Design Corp., model SR22, fixed wing aircraft, serial #0081; tail #N845JR

3.      2013 Cadillac CTS-V, VIN 1G6DV5EP3D0115156, Texas LP #BLG6256

4.      2015 Cadillac SR-X, VIN 3GYFNDE33FS548060, Texas LP #DZF9642

5.      2014 Jeep Grand Cherokee, VIN 1C4RJFDJ5EC572231, Texas LP #DXJ7034

6.      2013 Jeep Grand Cherokee, VIN 1C4RJFDJ7DC503944, Texas LP #DNF4280

7.      2014 Ford F-350 pickup, VIN 1FT8W3DT4EEA72174, Texas LP #CVL7604

8.      2013 Jayco, Melbourne Class C motorhome, VIN 1FDXE4FS6DDA39671, Texas LP #BSV7076

9.      2014 Bennington 2275 RCW pontoon boat, HIN ETW98130A414; Texas LP #505943H

10.    2014 United Trailer, UTP Haul Rite boat trailer, VIN 19BEM1625ECA14102; Texas LP #505943H

11.    2014 PJ Trailers, flatbed trailer, VIN 4P5LD3527E1204833, Texas LP #FCXH97

12.    2013 Can-Am, 5KDF XMR ATV, serial #3JBLWPP12DJ000740

13.    Caterpillar, 299D XHP track loader, serial # NLC368, together Bradco Magnum MM 60S mulcher

14.    Canon IR ADV 6255 copier, serial #NMU14325

15.    Any and all refunds or monies which may be owed to defendants, **Jeremy Chad Tidwell** and **Shanna Peek Tidwell**, in connection with Ground Lease executed on or about September 4, 2014 between Airport Properties, Inc., or their assigns, as Lessor, and **Jeremy Chad Tidwell** and **Shanna Peek Tidwell**, or their assigns, as Lessees.

16.    Any and all refunds or monies which may be owed to defendants, **Jeremy Chad Tidwell** and **Shanna Peek Tidwell**, in connection with rental agreement for apartment #202, Outlook Ridge, located at 5304 Outlook Blvd., Pueblo, Colorado

17.    Any and all refunds or monies which may be owed to defendants, **Jeremy Chad Tidwell** and **Shanna Peek Tidwell**, in connection with the lease or purchase of an airport hangar at the Gladewater, Texas airport by **Jeremy Chad Tidwell** and **Shanna Peek Tidwell**, or their assigns, as Lessees.

## Firearms:

1.      Smith and Wesson, M&P 15, .223 caliber rifle, serial number SU10708

2.      Stoeger, M3500, 12 caliber shotgun, serial number 1346926

3.      Ruger, LCR 22LR, .22 caliber pistol, serial number 548-34624

4.     Beretta, PX4 Storm, semi-automatic 9mm pistol, serial number PZ77540
5.     (1) case of .223 ammunition

**Substitute Assets:**

If any of the property described above as being subject to forfeiture, as a result of

any act or omission of the defendants -

   (a)     cannot be located upon the exercise of due diligence;
   (b)     has been transferred or sold to, or deposited with a third
           person;
   (c)     has been placed beyond the jurisdiction of the court;
   (d)     has been substantially diminished in value; or
   (e)     has been commingled with other property which cannot be
           subdivided without difficulty; it is the intent of the United States,
           pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other
           property of Defendants up to the value of the above forfeitable
           property, including but not limited to all property, both real and
           personal owned by defendants.

By virtue of the commission of the offenses alleged in this Indictment, any and all

interest the Defendants have in the above-described property is vested in the United

States and hereby forfeited to the United States pursuant to Pursuant to 21 U.S.C. § 853,

and 28 U.S.C. § 2461.

                                    A TRUE BILL,

                                    _BK_
                                    _____
Date: _2 -1 5 - 2015_               FOREPERSON OF THE GRAND JURY

JOHN M. BALES
UNITED STATES ATTORNEY


MARY ANN COZBY
ASSISTANT U.S. ATTORNEY

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | NO. 6:14CR63 |
| | § | |
| JEREMY CHAD TIDWLL (01) | § | |
| SHANNA PEEK TIDWELL (02) | § | |
| BRIAN TIDWELL (03) | § | |

## NOTICE OF PENALTY

### COUNTS 1, 2, and 42-49

Violation:                21 U.S.C. § 846

Penalty:                  Not more than 20 years imprisonment, a fine not to
                          exceed $1,000,000, or both – supervised release of at
                          least 3 years.

Special Assessment:       $100.00

### COUNT 3

Violation:                18 U.S.C. § 371

Penalty:                  Not more than 5 years imprisonment, a fine not to
                          exceed $250,000, or both – supervised release of not
                          more than 3 years.

Special Assessment:       $100.00

<u>COUNT 4</u>

Violation:                 21 U.S.C. § 846 (drug paraphernalia)

Penalty:                   Not more than 3 years imprisonment, a fine not to
                           exceed $250,000, or both – supervised release of not
                           more than 1 year.

Special Assessment:        $100.00

<u>COUNT 5</u>

Violation:                 18 U.S.C. § 1956(h)

Penalty:                   Not more than 20 years imprisonment, a fine not to
                           exceed $500,000 or twice the value of the property
                           involved in the transaction, whichever is greater, or
                           both – supervised release of not more than 3 years.

Special Assessment:        $100.00

<u>COUNTS 6-33</u>

Violation:                 18 U.S.C. § 1957

Penalty:                   Not more than 10 years imprisonment, a fine not to
                           exceed $250,000 or twice the value of the property
                           involved in the transaction, whichever is greater, or
                           both – supervised release of not more than 3 years.

Special Assessment:        $100.00

<u>COUNT 34</u>

Violation:                 21 U.S.C. § 844(a)

Penalty:                   Not more than 1 year imprisonment, a fine of a
                           minimum of $1,000, or both - supervised release of not
                           more than 1 year.

Special Assessment:        $25.00

## COUNT 35

| | |
|---|---|
| Violation: | 18 U.S.C. § 924(c) |
| Penalty: | Imprisonment for not less than 5 years nor more than life which must be served consecutively to any other term of imprisonment, a fine not to exceed $250,000, and supervised release of not more than 5 years. |
| Special Assessment: | $100.00 |

## COUNTS 36-38

| | |
|---|---|
| Violation: | 18 U.S.C. § 1341 |
| Penalty: | A fine of not more than $250,000; imprisonment for not more than twenty (20) years; a term of supervised release of not more than three (3) years. |
| Special Assessment: | $100.00 |

## COUNT 39-41

| | |
|---|---|
| Violation: | 21 U.S.C. § 856 |
| Penalty: | Not more than 20 years imprisonment, a fine not to exceed $500,000, or both, supervised release of not more than 3 years. |
| Special Assessment: | $100.00 |